UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

THI MEDICAL, S.A.C., a Peruvian
company,

      Plaintiff,

v.

FILMORE MANAGEMENT TRADING, LLC
a Florida limited liability company, PEDRO R.
AST, an individual, CLAUDIO TORRES, an
individual, and TUV RHEINLAND GROUP,
a German corporation,

      Defendants.
_____/

## COMPLAINT

Plaintiff, THI Medical, S.A.C. ("THI"), by and through its undersigned counsel, sues

Filmore Management Trading, LLC ("Filmore"), Pedro R. Ast ("Ast"), Claudio Torres ("Torres"),

and TUV Rheinland Group ("TUV") (collectively, "Defendants") and states as follows:

## NATURE OF THE ACTION

1.      As the COVID-19 pandemic wreaked havoc on the world, governments scrambled

to provide lifesaving personal protective equipment ("PPE") to their citizens—particularly to

front-line medical workers and the elderly—who were deemed most vulnerable to falling victim

to the virus.  The country of Peru was no exception. THI, a Peruvian medical equipment

wholesaler, whose owner is himself a well-known physician in the country, scrambled to find a

reliable vendor that it could use to quickly and efficiently supply hospitals, government agencies,

and others in-country, with PPE.

2.      Unfortunately, where there is great need there are generally those bent on preying on that need, like Torres, Ast, and Filmore.  After learning that THI was in search of a reliable PPE source, Torres introduced THI to Ast, the head of Filmore.  Torres presented Ast to THI as a person THI could trust.  Torres also told THI that Filmore was a reputable company that had authentic 3M masks.  Ast represented to THI that Filmore could provide 500,000 3M 1860 N95 respirators ("3M Masks").  Ast knew that these masks were destined for hospitals and government agencies and would be used to protect hundreds of thousands of people, including medical professionals on the front lines who were treating highly contagious COVID patients.  Filmore— although it represented to THI that it had authentic 3M masks for sale—knew that it was selling counterfeit product.  Thereafter, Filmore used a series of bogus documents to convince THI to send Filmore $1,700,000.00, and Torres $126,244.00, for masks that were not authentic 3M masks.  Finally, Filmore engaged the services of a third co-conspirator, TUV, to prepare a fraudulent and misleading inspection report, which falsely confirmed that the 3M Masks were authentic.

3.      Once THI's shipment of 3M Masks arrived in Peru, the gravity of the fraud soon materialized.  After the goods had cleared customs, 3M filed a complaint with Peru's National Institute for the Defense of Competition and the Protection of Intellectual Property ("INDECOPI"),[1] claiming that the 3M Masks were counterfeit.  The masks were then seized and have been held by INDECOPI ever since.

4.      In order to defend itself from what it believed at the time was an error by 3M, THI reached out to Filmore and Torres to request additional documentation demonstrating the authenticity of the 3M masks.  Filmore and Torres sent documents that THI would later learn were

---

[1]      INDECOPI is a government agency in Peru that promotes competition and the protection of intellectual property rights.

fraudulent. These documents included invoices, certifications, and even emails that had purportedly been sent by 3M confirming the authenticity of the 3M Masks. In short, Filmore and Torres not only defrauded THI at the inception of their relationship, but they doubled down on that fraud in an attempt to avoid liability. THI now faces civil penalties and fines in Peru from INDECOPI, is being sued by its clients in Peru, and is out millions of dollars paid to obtain what are unusable, unsellable, and counterfeit 3M face masks.

## THE PARTIES

5.      Plaintiff THI is a corporation organized and existing under the laws of Peru with its principal place of business located at Calle Domingo de la Presa 252, Santiago de Sucro 15023, Peru. John Seminario Salazar ("Seminario") is the Chief Executive Officer of THI.

6.      Defendant Filmore is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business located at 900 Brickell Key Blvd., Miami, Florida.

7.      Defendant Ast is, upon information and belief, domiciled in Florida and is a manager of Filmore. Defendant Ast is a co-conspirator in the fraud orchestrated by Filmore and was the principal point of contact for THI in its dealings with Filmore.

8.      Defendant Torres is, upon information and belief, domiciled in California and was an independent broker who introduced THI to Filmore. Defendant Torres is a co-conspirator in the fraud orchestrated by Filmore.

9.      Defendant TUV is a corporation organized and existing under the laws of Germany, with its principal place of business located at Am Grauen Stein Koln, 51105 Germany. Defendant TUV provides technical testing of products in the areas of safety, efficiency, and quality.

3

Defendant TUV's inspection report falsely represented that the 3M Masks were authentic. Defendant TUV is a co-conspirator in the fraud orchestrated by Filmore.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over this action under 28 U.S.C § 1331 because the contract in question is governed by the United Nations Convention on Contracts for the International Sale of Goods, a treaty to which the United States is a signatory.

11. This Court also has supplemental jurisdiction over the claims against Torres and TUV under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the claims over which the Court has original jurisdiction.

12. This Court has general personal jurisdiction over Filmore under Section 48.193(2), Florida Statutes, because its principal place of business is in Florida and therefore it is engaged and/or has engaged in substantial and not isolated activities within Florida.

13. Additionally, this Court has specific personal jurisdiction over Filmore under:

    a. Section 48.193(1)(a)(1), Florida Statutes, because Filmore operates, conducts, engages in or carries on a business in Florida; and/or

    b. Section 48.193(1)(a)(7), Florida Statutes, because Filmore breached a contract governed by the laws of the State of Florida by failing to deliver authentic 3M masks to THI, despite receiving funds in its Florida bank account as payment for 3M masks; and/or

    c. Section 48.193(1)(a)(2), Florida Statutes, because Filmore committed a tortious act or acts in Florida, as further alleged below.

Filmore's contacts with the State of Florida are sufficient such that the Court's exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

14. This Court has general personal jurisdiction over Ast because he is domiciled in Florida.

15. This Court also has specific personal jurisdiction over Ast pursuant to Section 48.193(1)(a)(2), Florida Statutes, because Ast committed a tortious act or acts in Florida, as further alleged herein. Ast's contacts with the State of Florida are sufficient such that the Court's exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

16. This Court has specific personal jurisdiction over Torres pursuant to Section 48.193(1)(a)(2), Florida Statutes, because Torres committed a tortious act or acts in Florida, as further alleged herein. Torres' contacts with the State of Florida are sufficient such that the Court's exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

17. This Court has general personal jurisdiction over TUV under Section 48.193(2), Florida Statutes, through its wholly-owned North American subsidiary, TUV Rheinland of North America, Inc. ("TUV America"), which runs all of TUV's North American operations, inclusive of all operations in the United States. At all times relevant to this lawsuit, TUV America was acting as an agent of TUV. TUV America is registered to do business in Florida, has an office in Florida, and regularly engages in business in Florida. Therefore, TUV, through its subsidiary TUV America, is engaged and/or has engaged in substantial and not isolated activities within Florida.

18. This Court has specific personal jurisdiction over TUV pursuant to:

    a.    Section 48.193(1)(a)(1), Florida Statutes, because TUV operates, conducts, engages in or carries on a business in Florida, through its wholly owned subsidiary, TUV America; and/or

> b.      Section 48.193(1)(a)(2), Florida Statutes, because TUV committed a
>
> tortious act or acts in Florida, as further alleged herein.

TUV's contacts with the State of Florida are sufficient such that the Court's exercise of personal

jurisdiction does not offend traditional notions of fair play and substantial justice.

19.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events

or omissions giving rise to the claims here occurred in this District.

## GENERAL ALLEGATIONS

### *Torres Introduces THI to Filmore*

20.     THI was introduced to Torres through a mutual connection.  Upon learning that

THI was in search of 3M face masks for its clients in Peru, Torres advised he could locate the

approximately 1.3 million 3M masks THI was looking for, in exchange for a fee.

21.     Acting as THI's agent, Torres assisted THI in locating a distributor that could fulfill

THI's PPE needs.  Torres ultimately put THI in contact with two distributors, one of them being

Filmore, a Florida company engaged in the business of buying and selling PPE.  Torres eventually

sent THI a fraudulent invoice for consulting services in connection with his introduction of THI to

Filmore for the sale of "3M masks 1860."  *See* Torres Invoice attached as Exhibit "A."

22.     Torres represented that Ast, the head of Filmore, and Filmore, could be trusted and

were reputable.  Torres also advised THI that Filmore could provide authentic 3M masks to THI

quickly.

23.     Relying on Torres' representations, THI began negotiating with Filmore for the

purchase and sale of PPE, specifically 3M 1860 N95 respirators.  Filmore represented it had

authentic 3M face masks to sell and could ship them to THI in Peru.

### *THI and Filmore Execute A Valid Contract*

24.     In fact, to convince THI of its ability to deliver authentic 3M masks, Ast sent THI an inspection report prepared by TUV, Inspection Report No. ITD2020N200431 (the "Inspection Report").  *See* Inspection Report attached as Exhibit "B." The Inspection Report, dated November 25, 2020, stated that the masks inspected were 3M 1860 N95 respirators.  *See id*. at 1-2, 7-9.  The photos included in the Inspection Report also show the masks in 3M packaging and bearing the lot number B20245.  *Id.* at 3-9.

25.     Upon information and belief, TUV knew Filmore was using this report to validate the authenticity of the 3M masks that Filmore was selling to others, including THI.  Further, upon information and belief, TUV has been providing similar inspection reports to other PPE suppliers for similar purposes.

26.     Thereafter, on or around December 4, 2020, Seminario, on behalf of THI, and Ast, on behalf of Filmore, executed a Sale and Purchase Agreement (the "Agreement") in which THI purchased 500,000[2] 3M 1860 N95 respirators bearing the lot number B20245 from Filmore for $1,700,000.00.  *See* Agreement attached as Exhibit "C."

27.     The Agreement, which is governed by Florida law, was executed in Florida by Filmore and in Peru by THI. Significantly, the Agreement does not exclude the application of the United Nations Convention on Contracts for the International Sale of Goods ("CISG"), a treaty to which the United States and Peru are signatories.

28.     The Agreement included numerous representations that the 3M Masks were authentic and complied with 3M standards of quality. For example:

---

[2]     Filmore later agreed to ship 40 additional masks, making the total amount 500,040 3M masks.

a.   "The 3M 1860 Respirators shall be manufactured in the United States of America by any 3M facility;"

b.   The 3M masks "shall confirm [*sic*] with the Manufacturer's technical product specifications;"

c.   The 3M masks were to be contained in the "original Manufacturer Packing of Product Code 3M Code 1860."

*See* Ex. "C."

29.   The Agreement even included the applicable trademark symbols located immediately following the references to "3M," further reinforcing that the 3M Masks THI contracted for were going to be authentic ones. *See id.*, at art. 1-2.

30.   At the time the Agreement was executed, and the Inspection Report was provided, nothing in those documents would have given THI pause as to whether the 3M Masks were authentic. To the contrary, all representations confirmed that the masks were being directly sourced from 3M.

31.   THI relied on the representations made by Filmore and TUV when executing the Agreement and reasonably expected that it would receive authentic 3M masks.

32.   On or around December 7, 2020, Filmore sent THI an invoice confirming THI's purchase of the 3M Masks. Also attached to the invoice were Filmore's wire instructions.

33.   On or around December 10, 2020, THI wired its first payment of $1,000,000.00 from its Chase bank account in Miami, Florida, to Filmore's Citibank account in Miami, Florida pursuant to Filmore's wire instructions. The following day, THI wired the remaining $700,000.00, thereby completing THI's obligations under the Agreement.

34.     Because the parties agreed to Ex Works shipping terms, THI hired MIMPO Global Logistics, S.L. ("MIMPO"), a Spanish transport company, to ship the 3M Masks from Hong Kong to Lima, Peru.  THI paid MIMPO $565,752.34 for its services.  Due to several delays related to logistical issues, the holiday season, and COVID-19, MIMPO was not able to ship the 3M Masks until the latter part of December.

### *An Unexpected Turn in Peru*

35.     THI's shipment of 3M Masks arrived in Peru on or around January 3, 2021. The Peruvian Customs Authority cleared THI's shipment.  It also notified 3M Peruvian representatives that containers of face masks had arrived bearing the 3M trademark.

36.     Representatives from 3M inspected THI's shipment and concluded that the 3M Masks were counterfeit.  As a result, 3M filed a complaint with INDECOPI, requesting that it seize the masks and require THI, as the importer of the purportedly counterfeit 3M Masks, to prove their authenticity before releasing them.

37.     On or around January 5, 2021, INDECOPI accepted 3M's infringement action, seized THI's shipment of the 3M Masks, and ordered further inspection.  THI has been forced to partake in these administrative proceedings, which are ongoing.

38.     The seizure of the 3M Masks it paid for has derailed THI's business and ability to provide the 3M Masks to its customers, to whom it had already sold them.  Consequently, THI now faces looming lawsuits from its clients as a result of Defendants' actions.

39.     Further, THI has incurred substantial additional costs, including but not limited to, customs clearance, storage, transportation, taxes, commissions, and attorneys' fees as a result of the proceedings in Peru and the wrongful acts of the Defendants.

### *Torres and Filmore Continue to Defraud THI in the Aftermath*

40.     After THI was unexpectedly forced to defend itself in Peruvian administrative proceedings, Seminario contacted Ast and Torres requesting that they provide THI with any and all additional documentation reflecting the authenticity of the 3M Masks at issue.

41.     In response, Torres sent THI a fraudulent letter purporting to be from Filmore to INDECOPI confirming that THI's order of 3M masks was authentic.

42.     Then, on or around February 2, 2021, Filmore sent THI several documents purporting to be from 3M, with 3M's trademark appearing on each document, including:

> a.     An invoice with an order date of September 21, 2020, indicating that 500,040 3M masks from lot number B20245 were shipping from Aberdeen, South Dakota;
>
> b.     A bill of lading reflecting a shipment date of November 18, 2020 and indicating that the 500,040 3M masks were being transported from Aberdeen, South Dakota (where 3M manufactures face masks) to Hong Kong; and
>
> c.     An order confirmation with 3M, reflecting an order date of September 21, 2020, for 500,040 3M masks.

(collectively, the "3M Documents").  *See* the 3M Documents, attached as Composite Exhibit "D."

43.     Conspicuously, all information related to the purchaser's name, contact information, order number, and account number was redacted.

44.     Ast also sent THI documents purporting to be 3M certifications that the masks were authentic and manufactured in Aberdeen, South Dakota.

45.     In February 2021, Ast informed THI that 3M had advised its Peruvian agent, Mr. Manlio Bassino ("Bassino") in writing, that lot B20245[3] contained authentic 3M 1860 N95 masks (the "3M Letter").

46.     Based on Ast's email, THI contacted Bassino, believing that such correspondence would resolve the matter, and THI could obtain the release of the 3M Masks.  Bassino insisted he had received no such correspondence and refused to withdraw his complaint before INDECOPI.

47.     THI contacted Filmore once again and demanded a copy of the purported 3M Letter.  Ast responded on February 8, 2021, attempting to shift THI's focus away from Filmore to Bassino, stating: "[t]here seems to be some strange agenda by Bassino and I believe it's best if your counsel can contact with them directly."  *See* February 8, 2021, Email from Ast, attached as Exhibit "E."

48.     The following day, February 9, 2021, Ast again emailed THI and alleged to have been in direct communication with 3M. *See* February 9, 2021, Email from Ast attached as Exhibit "F."  This email stated that Bassino's failure to receive the 3M Letter must have been attributable to Bassino's email spam filters.  Ast quoted the purported email from 3M:

> We kindly suggest Dr. Bassino to check his inbox as well as the junk mail/spam for this communication. . . . We also suggest Dr. Bassino to check his mailbox using a desktop computer instead of accessing it via a mobile app.  Thank you.

*See* Ex. "F."

49.     In that same email, Filmore also attached the 3M Letter on February 9, 2021.  *See* 3M Letter, attached as Exhibit "G."   The 3M Letter stated that the 3M masks from lot B20245

---

[3]     The same lot that the masks for THI purportedly came from.

imported by THI were manufactured in 3M's Aberdeen, South Dakota plant and were in fact authentic.[4]  *See* Ex. "G."

50.    Upon information and belief, Filmore was never in direct communication with 3M, and the purported communications from 3M were all a ruse to further perpetrate the fraud.

### *The INDECOPI Proceedings*

51.    The INDECOPI proceedings have also laid bare the extent of the fraudulent scheme.

52.    On or around February 26, 2021, 3M's Chief Trademark Counsel, Colette Durst ("Durst"), filed an affidavit in those proceedings explaining that the 3M Masks were indeed counterfeit.  Durst made several alarming declarations:

    a.    3M only manufactures the 1860 mask in the United States and Singapore. All shipments of 1860 masks from China "shall be deemed as counterfeit, as the one made in this case."

    b.    3M routinely publishes Customer Alerts identifying those lot numbers that are counterfeit.  Lot B20245 was identified by 3M as being a counterfeit lot.

    c.    3M has no relationship with TUV and TUV does not have the knowledge or background to authenticate the masks.

53.    3M has since also confirmed that the 3M Letter purporting to classify lot B20245 as authentic (Exhibit "G") is fraudulent and did not originate from 3M's servers.  Moreover, 3M advised that the noreply@mmm.com email that purportedly was used to send the 3M Letter to Filmore is not a legitimate 3M email account.

---

[4]    This 3M Letter was later declared by 3M's Chief Trademark Counsel to be a fabricated 3M document.

54.     Within the INDECOPI proceedings, 3M has requested sanctions against THI for attempting to import counterfeit 3M masks, further damaging THI's reputation in Peru.

55.     THI has retained the undersigned and is obligated to pay them a reasonable fee in order to bring this suit.

56.     All conditions precedent to bringing this lawsuit have been performed, excused, and/or waived.

## COUNT I
### Breach of Contract for International Sale of Goods
### Under the CISG
### (Against Filmore)

57.     THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

58.     On or around December 4, 2020, THI and Filmore executed the Agreement.  Under the Agreement, Filmore was required to deliver 500,000 3M 1860 N95 masks to THI.  THI was responsible for arranging shipping from Filmore's warehouse in Hong Kong to Lima, Peru.

59.     Both the United States and Peru are signatories to the CISG.  The Agreement does not expressly exclude the application of the CISG.  Therefore, the CISG governs the Agreement between THI and Filmore, as well as the rights and obligations of THI and Filmore arising under the Agreement.

60.     Under the Agreement, Filmore was to deliver 500,000 authentic 3M masks conforming to 3M's quality standards. *See* Ex. "C" at art. 1.

61.     On or around, January 3, 2021, THI's shipment of 3M Masks arrived in Peru and 3M representatives examined THI's shipment.  The 3M representatives ultimately concluded that the 3M Masks were counterfeit and filed a complaint against THI, which was subsequently admitted by INDECOPI on January 5, 2021.

62.     Filmore fundamentally breached the Agreement by failing to deliver 3M masks that were of the quality and description required by the Agreement.

63.     That breach substantially deprived THI of what it reasonably expected under the Agreement.

64.     Although THI has taken measures to mitigate the impact of Filmore's fundamental breach, THI has nevertheless suffered damages for which it is entitled to compensation under the CISG.  To wit, Article 74 of the CISG provides for "[d]amages for breach of contract by one party" calculated as the "sum equal to the loss, including loss of profit, suffered by the other party as a consequence of the breach."  CISG, Art. 74.

65.     THI has suffered recoverable damages.

66.     THI is further entitled to recover pre-judgment interest on the $1,700,000.00 it paid to Filmore.

WHEREFORE, THI demands judgment against Defendant Filmore for damages, including any and all foreseeable damages, costs, shipping costs, lost profits, incidental and consequential damages, as well as prejudgment interest and interest at a rate prescribed under Sections 687.01 and 55.03, Florida Statutes.

<u>**COUNT II**</u>
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Against Filmore)**

67.     THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

68.     THI and Filmore are parties to the Agreement. Under the Agreement, THI had a reasonable commercial expectation of receiving authentic 3M masks, the express delivery of which was required under the Agreement.

69.     Filmore consciously and deliberately refused to discharge its contractual obligations under the Agreement and knew that the 3M Masks it provided THI were not authentic and did not conform to 3M's quality standards.

70.     Filmore's failure to deliver authentic 3M masks to THI unfairly frustrated the Agreement's purpose and disappointed THI's expectations.  THI reasonably expected to be provided authentic 3M masks so that THI could then fulfill its obligations to its clients.

71.     Filmore's failure to deliver authentic 3M masks is a material breach of the Agreement, which has deprived THI of the Agreement's benefits.

72.     As a result of Filmore's breach, THI has suffered damages and is entitled to same.

WHEREFORE, THI demands judgment against Defendant Filmore for damages in an amount to be established at trial, as well as pre-judgment and post-judgment interest and taxable costs, and for such further relief as the Court deems just and proper.

<u>**COUNT III**</u>
**Fraudulent Inducement**
**(Against Torres)**

73.     THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

74.     Torres made false representations to THI regarding his ability to find a reputable and reliable distributor that could fulfill THI's PPE needs.

75.     Torres also falsely represented that Ast and Filmore were trustworthy and reputable, because he knew they were not.

76.     Torres further falsely represented that Filmore had the capability to provide authentic 3M 1860 N95 masks to THI.

77.     At all times relevant hereto, Torres knew the 3M Masks Filmore intended to ship to THI were fake.

78.     Torres intended for THI to rely on his representations that Filmore could supply it with authentic 3M masks that met 3M's standards of quality.

79.     THI justifiably relied on Torres' misrepresentations and rendered full payment for the 3M Masks to Filmore.  Additionally, based on Torres's representations, THI agreed to pay and did pay Torres a fee.  *See* Ex. "A."

80.     Filmore failed to provide authentic 3M Masks to THI, pursuant to the terms of the Agreement.

81.     As a result of Torres' misrepresentations, THI has been damaged.

WHEREFORE, THI demands judgment against Defendant Torres for damages in an amount to be established at trial, as well as pre-judgment and post-judgment interest and taxable costs, and for such further relief as the Court deems just and proper.

## COUNT IV
### Fraudulent Inducement
### (Against Ast and Filmore)

82.     THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

83.     Ast made numerous false statements to THI regarding the authenticity of the 3M Masks, which false statements were reflected in the Agreement, including:

a.      "The 3M 1860 Respirators shall be manufactured in the United States of America by any 3M facility;"

b.      The 3M masks "shall confirm [*sic*] with the Manufacturer's technical product specifications;"

c.      The 3M masks will be delivered in the "original Manufacturer Packing of Product Code 3M Code 1860."

*See* Ex. "C" at art. 1.

84.     Ast also provided the Inspection Report to THI in an effort to induce THI to execute the Agreement with Filmore.  The Inspection Report contained additional false, deceptive, and misleading statements and representations regarding the masks, including:

      a.     Representations that the masks were 3M 1860 N95 respirators;

      b.     Photos showing the masks in 3M packaging; and

      c.     Photos bearing the lot number B20245, the same lot number reflected in the Agreement.

*See* Ex. "B" at 1, 3-7.

85.     At all times relevant hereto, Ast and Filmore knew the 3M Masks Filmore intended to ship to THI were fake.

86.     Ast and Filmore intended for THI to rely on their representations that the 3M Masks were authentic and met 3M's quality standards.

87.     THI justifiably relied on Ast's and Filmore's misrepresentations and rendered full payment for the 3M Masks.

88.     Filmore failed to provide authentic 3M masks to THI, pursuant to the terms of the Agreement.

89.     As a result of Ast's and Filmore's misrepresentations, THI has been damaged.

WHEREFORE, THI demands judgment against Defendants Ast and Filmore for damages in an amount to be established at trial, as well as pre-judgment and post-judgment interest and taxable costs, and for such further relief as the Court deems just and proper.

**COUNT V**
**Fraud**
**(Against Torres)**

90.     THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

91.     THI was in search of a distributor to provide 3M 1860 N95 masks to fulfill its clients' needs in Peru.

92.     Torres knew that THI was looking for PPE, specifically 3M masks.

93.     Torres represented that Filmore was capable of providing authentic 3M masks to THI.

94.     Torres, through and with the assistance of Filmore, misrepresented Filmore's ability to provide THI with authentic 3M masks and knew that these representations were false when made, as more particularly alleged above, including as follows:

      a.     Representing that Ast and Filmore were reputable and trustworthy.

      b.     Representing that Filmore had the ability to provide authentic 3M masks;

      c.     Providing a fraudulent invoice to THI for consulting services for the sale of "3M masks 1860" (Ex. "A"); and

      d.     Providing THI a fraudulent letter purporting to be from Filmore to INDECOPI, confirming that the 3M Masks THI purchased were authentic.

95.     Each of those representations were knowingly false when made.

96.     Torres made the foregoing misrepresentations and omissions knowing that they were material to THI, with the intent of inducing reliance on the part of THI.

97.     THI relied on the aforementioned false representations and paid Filmore $1,700,000.00 for the 3M Masks and $126,244.00 to Torres for consulting services.  THI also expended significant funds to ship the 3M Masks, and promised to deliver 3M Masks to its clients, incurring significant additional fees and exposure to potential liability in the process.

98.     As a direct and proximate result of the materially false representations made by Torres, through and with the full cooperation and assistance of Filmore, THI has been damaged.

18

WHEREFORE, THI demands judgment against Defendant Torres for damages in an amount to be established at trial, as well as pre-judgment and post-judgment interest and taxable costs, and for such further relief as the Court deems just and proper.

**COUNT VI**
**Fraud**
**(Against Ast and Filmore)**

99.    THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

100.    THI was in search of a distributor to provide 3M 1860 N95 masks to fulfill its clients' needs in Peru.

101.    Ast knew that THI was looking for PPE, specifically 3M masks.

102.    Filmore held itself out as being able to provide authentic 3M masks for THI through its Hong Kong supplier.

103.    Ast, through and with the assistance of Filmore, made various representations of fact that Ast and Filmore knew were false when made, as follows:

    a.    Representing that Filmore had the ability to provide authentic 3M masks that complied with 3M's quality standards;

    b.    Representing that the 3M Masks were manufactured in a 3M facility in the United States;

    c.    Providing THI deceptive, misleading and fraudulent 3M documents, including a letter purportedly written by 3M stating that lot B20245 was authentic, when in fact, it was counterfeit;

    d.    Providing a fraudulent 3M invoice, order confirmation, and bill of lading all reflecting the shipment of 500,040 3M masks from Aberdeen, South Dakota;

     e.    Providing fraudulent 3M certifications purporting to verify that the 3M Masks were manufactured in Aberdeen, South Dakota, and were authentic; and

     f.    Providing a deceptive, misleading, and fraudulent Inspection Report representing that the 3M Masks were authentic and conformed to 3M's quality standards.

*See* Exs. "B," "C," "D," and "G."

104.    Each of those representations were knowingly false when made.  Ast and Filmore either knew that Filmore could not provide authentic 3M masks, or that Filmore did not actually intend to supply authentic 3M masks.

105.    Ast made the foregoing misrepresentations and omissions knowing that they were material to THI, with the intent of inducing reliance on the part of THI.

106.    THI relied on the aforementioned false representations and sent the sum of $1,700,000.00 to Filmore's bank account.  It also expended significant funds to ship the 3M Masks, and promised to deliver the 3M Masks to its clients, incurring significant additional fees and exposure to potential liability in the process.

107.    As a direct and proximate result of the materially false representations made by Ast, through and with the full cooperation and assistance of Filmore, THI has been damaged.

WHEREFORE, THI demands judgment against Defendants Ast and Filmore for damages in an amount to be established at trial, as well as pre-judgment and post-judgment interest and taxable costs, and for such further relief as the Court deems just and proper.

**COUNT VII**
**Fraud**
**(Against TUV)**

108.    THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

109.    TUV falsely stated that the 3M Masks were 3M 1860 N95 respirators.

110.     At all times relevant hereto, TUV knew that the 3M Masks were not authentic.

111.     TUV intended for purchasers contracting with Filmore, including THI, to rely on its representations in the Inspection Report that the 3M Masks conformed to 3M's quality standards, so that those purchasers would buy fake 3M masks from Filmore believing they were authentic.

112.     THI justifiably relied on TUV's misrepresentations and rendered full payment to Filmore for the 3M Masks.

113.     As a result of TUV's misrepresentations, THI has been damaged.

WHEREFORE, THI demands judgment against Defendant TUV for damages in an amount to be established at trial, as well as pre-judgment and post-judgment interest and taxable costs, and for such further relief as the Court deems just and proper.

**COUNT VIII**
**Negligent Misrepresentation**
**(Against Torres)**

114.     THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

115.     Torres falsely represented that Ast and Filmore were reputable and trustworthy.

116.     Torres also falsely represented that Filmore could supply THI with authentic 3M masks.

117.     At all times relevant hereto, Torres knew or should have known that Filmore could not provide authentic 3M masks to THI as promised.

118.     Torres provided a fraudulent invoice to THI for consulting services for the sale of "3M masks 1860." *See* Ex. "A."

119.     Torres also provided THI a fraudulent letter purporting to be from Filmore to INDECOPI, confirming that the 3M Masks sold to THI were authentic.

120.     Torres intended to induce THI to rely on his misrepresentations by contracting to have Filmore sell THI the 3M Masks, and pay him a fee for finding authentic 3M masks to purchase.

121.     THI justifiably relied on Torres' misrepresentations and agreed to purchase the 3M Masks from Filmore for $1,700,000.00 and pay Torres $126,244.00 for consulting services. THI also expended significant funds to ship the 3M Masks, and promised to deliver 3M Masks to its clients, incurring significant additional fees and exposure to potential liability in the process.

122.     As a result of Torres' misrepresentations, THI has been damaged.

WHEREFORE, THI demands judgment against Defendant Torres for damages in an amount to be established at trial, as well as pre-judgment and post-judgment interest and taxable costs, and for such further relief as the Court deems just and proper.

**COUNT IX**
**Negligent Misrepresentation**
**(Against Ast and Filmore)**

123.     THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

124.     Ast falsely represented that Filmore could supply THI with authentic 3M masks.

125.     At all times relevant hereto, Ast knew or should have known that Filmore could not provide authentic 3M masks to THI as promised.

126.     Ast, through and with the assistance of Filmore, made various representations of fact, including but not limited to:

   a.     Representing that Filmore had the ability to provide authentic 3M masks that complied with 3M's quality standards;

   b.     Representing that the 3M Masks were manufactured in a 3M facility in the United States;

22

     c.      Providing THI deceptive, misleading, and fraudulent 3M documents, including a letter purportedly written by 3M stating that lot B20245 was authentic, when in fact, it was counterfeit;

     d.      Providing a fraudulent 3M invoice, order confirmation, and bill of lading all reflecting the shipment of 500,040 3M masks from Aberdeen, South Dakota;

     e.      Providing fraudulent 3M certifications purporting to verify that the 3M Masks were manufactured in Aberdeen, South Dakota, and were authentic 3M masks; and

     f.      Providing a deceptive, misleading, and fraudulent Inspection Report from TUV representing that the 3M Masks were authentic and conformed to 3M's quality standards.

*See* Exs. "B," "C;" *see also* Exs. "D" and "G."

127.    Ast and Filmore intended to induce THI to rely on their misrepresentations and have THI pay for 3M masks Ast and Filmore knew were fake but represented to THI as being authentic.

128.    THI justifiably relied on Ast's and Filmore's misrepresentations and agreed to purchase the 3M Masks from Filmore for $1,700,000.00. THI also expended significant funds to ship the 3M Masks, and promised to deliver 3M Masks to its clients, incurring significant additional fees and exposure to potential liability in the process.

129.    As a result of Ast's and Filmore's misrepresentations, THI has been damaged.

WHEREFORE, THI demands judgment against Defendants Ast and Filmore for damages in an amount to be established at trial, as well as pre-judgment and post-judgment interest and taxable costs, and for such further relief as the Court deems just and proper.

## COUNT X
### Negligent Misrepresentation
### (Against TUV)

130.    THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

131.    TUV falsely represented that lot B20245 contained authentic 3M 1860 N95 masks.

132.    At all times relevant hereto, TUV knew or should have known that the 3M Masks were not authentic and were not produced by 3M.

133.    TUV intended for purchasers contracting with Filmore, including THI, to rely on its representations in the Inspection Report that the 3M Masks were authentic and conformed to 3M's quality standards so that those purchasers would buy 3M masks from Filmore believing they were authentic.  *See* Ex. "B."

134.    THI justifiably relied on TUV's misrepresentations and rendered full payment to Filmore for the 3M Masks.

135.    As a result of TUV's misrepresentations, THI has been damaged.

WHEREFORE, THI demands judgment against Defendant TUV for damages in an amount to be established at trial, as well as pre-judgment and post-judgment interest and taxable costs, and for such further relief as the Court deems just and proper.

## COUNT XI
### Breach of Florida's Deceptive and Unfair Trade Practice Act ("FDUPTA")
### Florida Statutes §§ 501.201, *et seq.*
### (Against Filmore)

136.    THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

137.    Filmore is a Florida limited liability company that engaged in a series of deceptive and unfair trade practices against its customer, THI.

138.    Filmore delivered 3M masks from Hong Kong to Peru thereby engaging in "trade or commerce" as defined in Section 501.203(8), Florida Statutes.

139.    THI, as a medical equipment wholesaler, is a "consumer" as defined under Section 501.203(7), Florida Statutes.

140.    Filmore's deceptive and unfair practices included, but were not limited to:

    a.    Misrepresenting that it was selling authentic 3M masks;

    b.    Misrepresenting that the 3M Masks conformed to 3M's quality standards;

    c.    Misrepresenting that the 3M Masks were manufactured in 3M's Aberdeen, South Dakota plant in the United States; and

    d.    Providing fraudulent documentation to support its position that the masks it sold to THI were authentic 3M masks.

*See* Ex. "C;" *see also* Exs. "D," and "G."

141.    THI rendered $1,700,000.00 as payment for the 3M Masks.

142.    Filmore's actions constitute unfair and deceptive trade practices that are expressly prohibited by Section 501.204, Florida Statutes.

143.    As a direct and proximate cause of Filmore's unfair and deceptive trade practices, THI has suffered actual damages.  THI is also entitled to its attorneys' fees and costs for having to bring this action for deceptive trade practices under the applicable Florida statute.

WHEREFORE, THI demands judgment against Defendant Filmore for damages in an amount to be determined at trial, interest as allowed by law, reasonable attorneys' fees and costs

pursuant to Section 501.2105, Florida Statutes, and for such further relief as the Court deems just and proper.

**COUNT XII**
**Breach of Fiduciary Duty**
**(Against Torres)**

144.    THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

145.    At all times material hereto, a fiduciary relationship existed between THI and Torres, whereby Torres acted as an agent of THI in locating a reputable distributor that could supply THI with authentic 3M masks.

146.    THI also placed trust and confidence in Torres to find a reliable distributor of 3M masks in the United States.

147.    The fiduciary duty of Torres required him to act in the best interests of THI.

148.    Torres breached his fiduciary duty to THI when he introduced THI to Filmore, a company that Torres knew could not provide THI with authentic 3M masks.

149.    As a direct and proximate result of Torres' breach of his fiduciary duty to THI, THI has suffered damages.

WHEREFORE, THI demands judgment against Defendant Torres for damages in an amount to be established at trial, as well as pre-judgment and post-judgment interest and taxable costs, and for such further relief as the Court deems just and proper.

**COUNT XIII**
**Civil Conspiracy**
**(Against All Defendants)**

150.    THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

151.   Defendants entered into an express or implied agreement among themselves to unlawfully mislead, deceive, and defraud THI, as further described above, and to enrich themselves at THI's expense.

152.   Torres, on his own behalf, performed one or more acts in furtherance of the conspiracy, as more particularly alleged above, including but not limited to:

   a.   Introducing THI to Ast and Filmore, representing that they were reputable and trustworthy when he knew they were not;

   b.   Advising THI that Filmore could provide the requisite 3M masks, knowing that Filmore could not provide authentic 3M masks;

   c.   Sending THI an invoice for consulting services related to the sale of 3M masks (*see* Ex. "A"); and

   d.   Providing THI a fraudulent letter that Torres affirmed had been sent by Filmore to INDECOPI, wherein such letter Filmore represents to INDECOPI that the 3M Masks sold to THI were authentic 3M masks.

153.   Ast, on his own behalf and on behalf of Filmore, performed one or more acts in furtherance of the conspiracy, as more particularly alleged above including the following:

   a.   Sending the Agreement to THI, knowing that Filmore did not have the capability to perform as promised;

   b.   Affixing his name to an Agreement, which falsely represented that the 3M Masks would be authentic;

   c.   Convincing THI to wire $1,700,000.00 to Filmore's Florida bank account by falsely representing that the 3M Masks had been manufactured in the

United States, were authentic 3M masks, and that TUV had been able to confirm that the 3M Masks were authentic; and

    d.    Sending deceptive, misleading, and fraudulent documents purporting to be from 3M that portrayed the masks as authentic, when they were counterfeit.

*See* Ex. "C;" *see also* Exs. "D" and "G."

154.    TUV performed one or more acts in furtherance of the conspiracy, as more particularly alleged above, including the following:

    a.    Falsely representing that the masks from lot number B20245 were authentic 3M masks; and

    b.    Falsely representing that the 3M Masks conformed to 3M's quality standards.

*See* Ex. "B."

155.    The combined actions of all Defendants were intended to induce THI to rely on the afore-described misrepresentations.

156.    As a direct and proximate result of the conspiracy to defraud, THI has been damaged.

WHEREFORE, THI demands judgment against Defendants Torres, Filmore, Ast, and TUV for damages in an amount to be established at trial, as well as pre-judgment and post-judgment interest and taxable costs, and for such further relief as the Court deems just and proper.

### COUNT XIV
### Unjust Enrichment
### (Against Torres)

157.    THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

158.    THI conferred a benefit on Torres in the amount of $126,244.00 for introducing THI to Filmore in connection with the purchase of the 3M Masks.

159.    Torres voluntarily accepted and retained the benefit THI conferred.

160.    Because THI has been unable to take possession of the 3M Masks it paid for, the circumstances are such that it would be inequitable for Torres to retain the funds.

WHEREFORE, THI demands judgment against Defendant Torres for damages in an amount to be established at trial, as well as pre-judgment and post-judgment interest and taxable costs, and for such further relief as the Court deems just and proper.

## COUNT XV
### (In the Alternative to Counts I & II)
### Conversion
### (Against Filmore)

161.    THI re-alleges paragraphs 1 through 55 above as if fully alleged herein.

162.    THI wired $1,700,000.00 to Filmore's Florida bank account with the express instruction that such monies were to be used to fulfill the Agreement.

163.    Rather than deliver the 3M Masks, Filmore misappropriated the funds for an unauthorized use.

164.    THI has demanded that Filmore return the $1,700,000.00.

165.    To date, Filmore has failed to refund any monies to THI.

166.    Filmore's continuous and wrongful possession of THI's money has deprived THI of the use of that money, including the ability to find another manufacturer and distributor of authentic 3M masks.

167.    As a direct and proximate result, THI has been damaged.

WHEREFORE, THI demands judgment against Defendant Filmore for damages in an amount to be established at trial, as well as pre-judgment and post-judgment interest and taxable costs, and for such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

THI demands a trial by jury for all matters so triable.

Dated:  April 28, 2021                    Respectfully submitted,

DIAZ, REUS & TARG, LLP
100 Southeast Second Street
3400 Miami Tower
Miami, Florida 33131
Telephone: (305) 375-9220
Facsimile: (305) 375-8050

By: */s/ Roland Potts*
Michael Diaz (Florida Bar No. 606774)
Email Address: mdiaz@diazreus.com
Gary E. Davidson (Florida Bar No. 69094)
Email Address: gdavidson@diazreus.com
Roland Potts (Florida Bar No. 87072)
Email Address: rpotts@diazreus.com
Audriana Rodriguez (Florida Bar No. 1026178)
Email Address: arodriguez@diazreus.com

*Counsel for Plaintiff THI Medical, S.A.C.*