UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-21632-Civ-GAYLES/TORRES

THI MEDICAL, S.A.C.,

    Plaintiff,

v.

FILMORE MANAGEMENT TRADING, LLC, *et al.*,

    Defendants.

_____/

**REPORT & RECOMMENDATION ON DEFENDANTS'
MOTION TO DISMISS**

This matter is before the Court on Filmore Management Trading, LLC's ("Filmore") and Pedro R. Ast's ("Ast", and collectively with Filmore, "Defendants") motion to dismiss the amended complaint filed by THI Medical, S.A.C. ("THI" or "Plaintiff") [D.E. 58]. Plaintiff responded to the motion on February 14, 2022 [D.E. 72] to which Defendants replied on February 22, 2022. [D.E. 74]. Therefore, Defendants' motion is now ripe for disposition.[1] After careful consideration of the motion, response, reply, and relevant authority, and for the reasons discussed below, Defendants' motion should be **GRANTED in part and DENIED in part**.

---

[1] On September 14, 2021, the Honorable Darrin P. Gayles referred all dispositive matters to the Undersigned Magistrate for a report and recommendation. [D.E. 45].

1

## I.   BACKGROUND

Filmore is a Florida company that engages in buying and selling personal protective equipment. Ast is the CEO of Filmore. THI is a Peruvian medical equipment wholesaler that wished to sell PPE to hospitals and government agencies in Peru during the height of the Covid-19 pandemic. THI was introduced to Ast through Claudio Torres ("Torres") who told THI that Defendants had authentic 3M masks for sale.[2] Negotiations talks ensued between Ast and THI, during which Ast confirmed that his company could indeed deliver the masks. On December 4, 2020, THI agreed to purchase 500,000 3M 1860 N95 respirators from Filmore for $1,700,000.00 pursuant to the terms of a Sale and Purchase Agreement (the "SPA"). Between December 7 and 11, 2020, and prior to receiving the masks, THI wired two payments to Filmore's bank account in Miami for the agreed upon purchase price.

Prior to executing the SPA, Ast provided THI with an inspection report allegedly prepared by TUV Rheinland AG ("TUV") to assure THI that the masks were authentic 3M masks. The report was issued pursuant to a visual inspection of the masks at Defendants' warehouse in Hong Kong and purportedly confirmed the authenticity and quality of the masks. While THI was told the masks were made in the United States by 3M, the masks were to be shipped out of Hong Kong by a third-party who would deliver them in Lima. However, once the masks arrived in Peru, representatives from 3M concluded that they were counterfeit and a Peruvian government agency seized the masks and commenced administrative proceedings

---

[2] On February 16, 2022, Plaintiff filed a notice of voluntary dismissal, dismissing all Counts of the Complaint as to Defendant Claudio Torres. [D.E. 73].

against Plaintiff. THI brings this action against Filmore for breach of contract for international sale of goods (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and breach of Florida's Deceptive and Unfair Trade Practice Act (Count XI), and against Defendants for fraud in the inducement (Count IV), fraud (Count VI), negligent misrepresentation (Count IX), civil conspiracy (Count XIII), and conversion (Count XV). Defendants move to dismiss all counts against them except Counts I and XI.

## II.     APPLICABLE LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not

3

> required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2, (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### III.  ANALYSIS

Defendants argue each of Plaintiff's claims sounding in tort are precluded by Florida's independent tort doctrine, which prevents tort actions where the alleged misconduct is connected to, or goes to "the heart" of, a contract between the parties. [D.E. 58, pp. 5-6]. In addition, Defendants contend (1) that the claims sounding in fraud fail to meet the heightened pleading requirements under Federal Rule of Civil Procedure 9(b); (2) the claim for beach of implied warranties is barred because it does not allege the failure by Filmore to carry out a discretionary contractual obligation in good faith; and (3) the claim for conversion of money fails because it is barred by Florida law. We address each of these arguments below.

4

### A. *Independent Tort Doctrine*

#### 1. *Fraud in the Inducement (Count IV)*

As Defendants point out, the independent tort doctrine requires a plaintiff to demonstrate that a tort claim is independent of any breach of contract claim. *See Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 408-09 (Fla. 2013) (Pariente, J., concurring) (noting that the principle of the doctrine is to restrict remedies in tort when parties have already specifically negotiated for contractual remedies). This requirement, however, does not operate as a de facto prohibition on the assertion of tort claims between parties in contractual privity. *See id.* at 402. This, the Supreme Court of Florida has said, is particularly true in the context of fraud allegations that are pleaded alongside claims for breach of contract:

> The economic loss rule has not eliminated causes of faction based upon torts independent of the contractual breach even though there exists a breach of a contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract. . . . Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract. It normally "occurs prior to the contract and the standard of truthful representation placed upon the defendant is not derived from the contract."

*HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996) (citations omitted); *see also Moransais v. Heathman*, 744 So. 2d 973, 981 (Fla. 1999) (noting that a claim for fraudulent inducement can constitute a tort independent from the underlying breach of contract claim); *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 537 (Fla. 2004) ("Although parties in privity of contract are generally prohibited from recovering in tort for economic damages, we have permitted an action for such recovery in certain limited circumstances. One involves torts

5

committed independently of the contract breach, such as fraud in the inducement.") (citation omitted); *Hinton v. Brooks*, 820 So.2d 325, 326 (Fla. 5th DCA 2001) (claim for fraudulent inducement to enter into contract was not barred by Florida law).

Applying this established line of precedent to the facts of this case, we find that Plaintiff's allegations in support of its fraudulent inducement claim (Count IV) are separate from the allegations supporting the breach of contract claim and, as such, constitute an independent and actionable tort. Under Florida law, a plaintiff must allege the following to support a fraud in the inducement claim: "(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induce another's reliance; and (4) consequent injury by the other party acting in reliance upon the representation." *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 209 (Fla. 3d DCA 2003). Moreover, Florida courts have held that promises of future performance can support a claim for fraudulent inducement when those promises are made "without any intention of performing, or with the positive intention not to perform." *Palmer v. Santa Fe Healthcare Sys., Inc.*, 582 So. 2d 1234, 1236 (Fla. 1st DCA 1991); *see also Perry v. Cosgrove*, 464 So. 2d 664, 666 (Fla. 2d DCA 1985) (denying motion to dismiss fraud claim where defendant induced plaintiff into contract through promises defendant never intended to perform); *Stefan v. Singer Island Condominiums Ltd.*, No. 08-80039-CIV, 2009 WL 426291, at *16 (S.D. Fla. Feb. 20, 2009) (finding fraudulent inducement where promisor made promises of future conduct with the positive intent not to perform them).

Here, the Complaint alleges sufficient facts that Defendants' material and

6

deliberate misrepresentations induced Plaintiff to enter into the SPA, including statements from Ast that his company could meet Plaintiff's need for the 500,000 3M masks, and the TUV's inspection report purporting to certify that Defendants' masks were indeed authentic 3M respirators. These acts of alleged fraud crystalized before the parties ever executed the agreement and are distinct from the acts that allegedly breached the terms of the contract. Moreover, Plaintff asserts that Defendants made these promises without any intention of performing, for Defendants knew full well that their masks were in fact counterfeit items. As alleged, these acts constitute a fraud that is extraneous to the contract. They are acts of alleged deceit supported by "proof of facts separate and distinct form the breach of contract," *HTP, Ltd.*, 685 So.2d at 1239, and that were perpetrated to induce Plaintff into entering the agreement. *See, e.g., McArthur Dairy, LLC v. McCowtree Bros. Dairy*, No. 09-62033-CIV, 2011 WL 2118701, at *8 (S.D. Fla. May 27, 2011) ("A plaintiff has a cause of action for fraud if the fraud is perpetrated to induce the plaintiff to enter the contract."); *Mejia v. Jurich*, 781 So.2d 1175, 1178 (Fla. 3d DCA 2001) (holding that, "[W]hen fraudulent misrepresentations in the formation of the contract are alleged, as is the case here, the economic loss rule does not bar recovery.") (citations omitted).

Accordingly, Defendants' motion to dismiss Count IV should be DENIED. Plaintiff's allegation of fraudulent inducement constitutes an independent tort that is not barred under Florida law.

### 2. *Fraud (Count VI)*

To state a claim for fraud, a plaintiff must show: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *In re Harris*, 2021 WL 2946295, at *6 (11th Cir. July 14, 2021) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)). Here, Defendants point out that some of the alleged false statements in support of Count VI are the same ones alleged in the fraudulent inducement claim. However, THI pleads additional acts of deceit by Defendants after the parties executed the SPA, including Defendants' use of fabricated 3M documents and communications that purported to confirm that the delivered masks were authentic 3M respirators.

Defendants argue the fraud claim should be dismissed because it is duplicative of the fraudulent inducement count and is not independent of the breach of contract claim. Based on the legal authorities discussed above, we disagree. As noted earlier, "[w]here a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract." *HTP, Ltd.*, 685 So. 2d at 1239. Here, the allegations of additional fraud were not perpetrated to induce Plaintff to enter into the contract because these acts took place subsequent to the execution of the agreement. Nor were these fraudulent acts the actions that induced a breach of the contract, for the alleged breach materialized once Defendants failed to deliver authentic masks. *See Ferretti v. Nova Se. Univ., Inc.*, No. 20-CIV-61431-RAR, 2022 WL 471213, at *7 (S.D. Fla. Feb. 16, 2022) ("Regarding

8

his breach-of-contract claim, Plaintiff's cause of action accrued when Defendant allegedly breached their contract"); *Untiedt's Vegetable Farm, Inc. v. S. Impact, LLC*, 493 F. Supp. 3d 764, 771 (D. Minn. 2020) ("[A] cause of action for breach of contract accrues at the time of the breach, even if actual damages resulting therefrom do not occur until afterwards"). Instead, Plaintiff asserts that these additional acts of deceit and fraud were undertaken by Defendants after their breach of the contract had occurred, and as part of an effort to conceal the fact that a breached had taken place in the first place.

To be sure, the Complaint alleges that once the non-conforming masks arrived in Peru, 3M local representatives inspected the shipment and concluded that they were counterfeit. This led the Peruvian intellectual property authorities to confiscate the masks and commence administrative proceedings against Plaintiff in Peru. In light of this unexpected turn of events, THI contacted Defendants to request written proof that the masks were authentic, but Ast and Filmore provided Plaintiff with what turned out to be fraudulent documents that falsely claimed, among other things, that Defendants purchased the masks directly from 3M, that the masks were manufactured in 3M's Aberdeen factory, and that 3M officially vouched for the authenticity of the subject masks.

For the purposes of this motion, Plaintiff has alleged sufficient facts that Defendants' acts involved in the use of forged documents and fabricated email communications were actions extraneous to the breach of the contract. As it was the case with the fraud in the inducement claim, here, too, the additional acts of fraud were separate from the alleged breach of contract, for they were undertaken by

9

Defendants after the breach had materialized, and in an effort to conceal the fact that the breached had taken place.[3] Accordingly, because Plaintiff's claim is an independent fraud claim separate from the breach of contract, Defendants' motion to dismiss Count VI should be DENIED.

### 3. *Negligent Misrepresentation (Count IX)*

To state a cause of action for negligent misrepresentation, a plaintiff must allege that: "(1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation. *See Florida Women's Med. Clinic, Inc. v. Sultan*, 656 So. 2d 931 (Fla. 4th DCA 1995) (quoting *Baggett v. Electricians Local* 915, 620 So. 2d 784, 786 (Fla. 2d DCA 1993)).

Plaintiff alleges a claim for negligent misrepresentation in the alternative to its fraud claim (Count VI). In opposition, Defendants reassert the same preclusion argument they asserted against the fraud counts; namely, that the negligent misrepresentation claim is not independent from the breach of contract claim and, as such, it is precluded under Florida law. For the same reasons discussed above, *see supra* Section A.1, we disagree.

---

[3] "[T]he interest protected by fraud is society's need for true factual statements in important human relationships, primarily commercial or business relationships. More specifically, the interest protected by fraud is a plaintiff's right to justifiably rely on the truth of a defendant's factual representation in a situation where an intentional lie would result in loss to the plaintiff." *HTP, Ltd.*, 685 So. 2d at 1240 (quoting of *Woodson v. Martin*, 663 So. 2d 1327, 1330 (Fla. 2d DCA 1995) (Altenbernd, J., dissenting)).

First, pleading causes of action in the alternative is perfectly permissible under Federal Rule of Civil Procedure 8(d)(3). *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Allstate Ins. Co. v. James*, 779 F.2d 1536, 1540 (11th Cir. 1986) ("Litigants in federal court may pursue alternative theories of recovery, regardless of their consistency."). Second, as noted above, Plaintiff has sufficiently pleaded facts that support its claim that Defendants misrepresented material facts that they knew or should have known were false, and that  induce Plaintff into entering an agreement that resulted in injury to Plaintiff.  Hence, Defendant's motion to dismiss Count IX should be DENIED. *See Coast to Coast Supply Sols., LLC v. Bank of Am., Corp.*, 2020 WL 2494487, at *2 (M.D. Fla. May 14, 2020) ("[I]t is permissible to have a breach of contract count and a negligence count in the same complaint without running astray of the independent tort doctrine.").

### B.   *Rule 9(b)*

Defendants next argue that Plaintiff's fraud in the inducement, fraud, and civil conspiracy claims (Counts IV, VI, and XIII) fail to meet the heightened pleading standard under Rule 9(b).  Where a cause of action sounds in fraud, plaintiff must satisfy the pleading requirements embodied in Rule 9(b). *See U.S. ex. rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1309-10 (11th Cir. 2002).  Rule 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but that "[m]alice, intent, knowledge, and other conditions of a person's mind shall be averred generally."   Fed. R. Civ. P. 9(b).  Rule 9(b) is satisfied if a plaintiff pleads:

11

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).  In other words, this requires a plaintiff to establish the 'who, what, when, where, and how' of the fraud." *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1353 (S.D. Fla. 2016) (citing *Garfield v. NDC Health Corp.*, 466 F. 3d 1255, 1262 (11th Cir. 2006)).  The pleading may use, in the alternative, means reasonably calculated to notify a defendant with particularity of his alleged role in the fraud.  *See Brooks*, 116 F.3d at 1381.

Accepting all the allegations in the Complaint as true, and drawing all reasonable inferences in favor of Plaintiff, *see Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002), we find that Plaintff has sufficiently pleaded its fraud claims.  As to the fraud in the inducement claim, Plaintff has specifically alleged that while negotiating the agreement with Filmore's CEO Ast (the *who*), he "represented to THI that Filmore could provide 500,000 3M 1860 N95 respirators" (the *what*) for THI to distribute in Peru (the *where*).  The Complaint asserts that, while Filmore and Ast knew that their masks were counterfeit, to convince Plaintiff of Filmore's ability to perform Ast sent THI a misleading inspection report "dated November 25, 2020," (the *how* and *when*) that represented that the masks inspected were authentic 3M 1860 N95 respirators.  [D.E. 53, ¶¶ 2, 22, 23,

12

83-85]. Likewise, the Complaint makes specific allegations of facts regarding the fraudulent conduct undertaken by Defendants in order to conceal their breach of the agreement. Plaintiff alleges that "on or around February 2, 2021," Filmore sent THI several false documents purporting to be from 3M; that Ast also sent THI false 3M certifications confirming the authenticity of the masks; and that Ast sent multiple emails to Plaintiff, some of which were fabricated, falsely claiming that he had corresponded with 3M representatives and had confirmed the authenticity of the masks. *Id.* at ¶¶ 41-49.

Plaintiff described this series of events in detail in its Complaint and included multiple exhibits reflecting the nature of the statements made by Defendants and copies of the alleged forged documents. Thus, Plaintiff's fraud allegations satisfy Rule 9(b)'s pleading requirements. *See Paul's Concessions, Inc. v. Pacanins*, No. 05-60249-CIV, 2007 WL 9700528, at *5 (S.D. Fla. Feb. 23, 2007) (holding that fraud allegations were proper where plaintiff pleaded a reasonable delineation of the underlying facts).

Yet, this does not hold true for Plaintiff's conspiracy claim. Because the civil conspiracy claim is grounded in fraud, it is subject to the heightened pleading standard of Rule 9(b). THI alleges that there was either an implied or express agreement among Filmore, Ast, Torres, and TUV to defraud THI. The Complaint provides no other details regarding such alleged agreement and is devoid of any specific allegations of fact as to the formation or operation of the alleged scheme. The complaint is clearly missing the "when" and "where" requirements. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064 (11th Cir. 2007) (affirming the

13

dismissal of a conspiracy to commit fraud under Rule 9(b) because the claim only had conclusory allegations). While the Court may guess that the agreement to defraud THI was made prior to the execution of the SPA, the burden is on THI to specifically make this allegation under Rule 9(b). It is also noteworthy that Plaintff has voluntarily dismissed all counts against Defendant Torres, whom the Complaint seems to describe as a key link within this alleged conspiracy. In sum, Plaintiff's conspiracy claim is insufficiently plead. Accordingly, Defendants' motion to dismiss Count XIII should therefore be GRANTED.

### C. *Implied Covenant of Good Faith and Fair Dealing (Count II)*

THI alleges in Count II a breach of the implied covenant of good faith and fair dealing. Defendants seek to dismiss this claim for failing to allege that Filmore took some discretionarily action in contravention or frustration of the SPA.

Florida contract law recognizes the implied covenant of good faith and fair dealing if it satisfies two conditions:

> Florida contract law recognizes the implied covenant of good faith and fair dealing in every contract. This covenant is intended to protect the reasonable expectations of the contracting parties in light of their express agreement. However, there are two restrictions on causes of action for the breach of good faith and fair dealing. First, the implied covenant of good faith should not be invoked to override the express terms of the agreement between the parties. Second, a claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached.

*Southern Internet Systems. Inc. ex rel. Menotte v. Pritula*, 856 So. 2d 1125, 1127 (Fla. 4th DCA 2003) (quoting *Insurance Concepts and Design, Inc. v. Healthplan Services, Inc.,* 785 So. 2d 1232, 1234-35 (Fla. 4th DCA 2001)). So, while a breach of the implied covenant of good faith and fair dealing is not technically an independent

cause of action, it is a theory of liability because it "attaches to the performance of a specific contractual obligation." *Centurion Air Cargo v. UPS Co.,* 420 F.3d 1146, 1151-52 (11th Cir. 2005).

THI contends Count II meets all the requirements to state a claim. We agree. The complaint specifically states, "Filmore consciously and deliberately refused to discharge its contractual obligations under the Agreement and knew that the 3M masks it provided THI were not authentic and did not conform to 3M's quality standards." [D.E. 1 at ¶ 69]. And "Filmore's failure to deliver authentic 3M masks to THI *unfairly frustrated* the Agreement's purpose and disappointed THI's expectations." *Id.* at ¶ 70 (emphasis added). Defendants' argument that the complaint lacks an allegation that Filmore took some discretionarily action in contravention or frustration of the SPA is thus not well taken. As such, Defendants' motion to dismiss Count II should be DENIED.

### D.   *Conversion (Count XV)*

Last, Defendants argue that the claim of conversion (Count XV) fails to identify specific funds subject to conversion. The general rule under Florida law is that "a simple monetary debt generally cannot form the basis of a claim for conversion," when there are allegations for breach of contract. *Walker v. Figarola*, 2011 WL 799737, at *1 (Fla. 3d DCA May 5, 2011); *see also Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft.").

But "the general rule does not foreclose a claim for . . . conversion under certain

15

limited circumstances." *Walker*, 2011 WL 799737 at *1. As the Third District Court of Appeal has explained:

> This is not to say that there can never be a claim for civil theft or conversion if there is a contractual relationship between the parties, but rather that the civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract. *See Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 495 (Fla. 3d DCA 1994) ("[A] plaintiff may not circumvent the contractual relationship by bringing an action in tort.").

*Gasparini*, 972 So. 2d at 1055-56; *see also 1021018 Alberta Ltd. v. Netpaying, Inc.*, 2011 WL 1103635, at *4 (M.D. Fla. Mar. 24, 2011) ("[A] claim for conversion may lie even where a contractual relationship exists between the parties if the alleged conversion exists independently of an alleged failure to perform contractual duties."). This provides a limited exception if a defendant's acts are not merely a failure to perform under a contract, but "'an affirmative and intentional act of converting the funds to his own use by allegedly stealing the monies to which he was entrusted.'" *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1362 (M.D. Fla. 2007) (quoting *Pershing Indus., Inc. v. Estate of Sanz*, 740 So. 2d. 1246, 1248 (Fla. 3d DCA 1999)).

Florida courts have found that claims for conversion constitute "more than mere breach of contract" in two situations. The first arises where defendants or their employees have stolen or embezzled funds, which were entrusted to them by the plaintiffs, for their own benefit. *See Szterensus v. Bank of Am., N.A.*, 2010 WL 427509, at *1 (S.D. Fla. Feb. 1, 2010) (finding plaintiffs' allegations that the money deposited with defendant bank was stolen by bank employee presented more than mere breach of contract); *Burke v. Napieracz*, 674 So. 2d 756, 758 (Fla. 1st DCA 1996)

16

(noting that defendant's "affirmative and intentional act of converting the funds to his own use by allegedly stealing the monies to which he was entrusted" gave rise to a tort separate and independent from the breach of contract). Under those circumstances, "the contract between the parties is irrelevant to the facts surrounding the alleged conversion or . . . the [breach of] contract is merely incidental to the conversion." *Szterensus*, 2010 WL 427509, at *3 (citing *Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F. Supp. 1562, 1573 (S.D. Fla 1993)).

The second situation where these claims constitute more than a mere breach of contract involves funds that are owned by the plaintiff and given to defendant to temporarily hold in a segregated and identifiable account, which the defendant then refuses to return. *See 1021018 Alberta*, 2011 WL 1103635, at *4 (finding defendant had a common-law duty to return funds to plaintiff where plaintiff's entitlement to those funds did not arise out of contract); *Batlle v. Wachovia Bank, N.A.*, 2011 WL 1085579, at *2 (S.D. Fla. Mar. 21, 2011) (finding claim of conversion of money in a bank account was proper where plaintiffs placed a certain amount of money into account and defendant later refused to return that money to plaintiffs).

Neither situation applies here based on the allegations in this complaint. While Defendants' argument regarding unidentifiable funds rings hollow, THI's allegations of conversion simply relate to the breach of contract claim because the facts underlying the claims are the same. Indeed, THI paid Defendants for what it believed to be real 3M masks, but Defendants apparently breached the SPA when they delivered counterfeit masks. Accepting and not returning payment for goods that failed to conform to the specifications of a contract is not conversion when the

17

parties have a controlling contract. Thus, Defendants' motion to dismiss Count XV should thus be GRANTED.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss Counts XII (conspiracy) and XV (conversion) of the amended complaint [D.E. 53] should be **GRANTED.** Defendants' motion to dismiss Counts II, IV, VI, and IX should be **DENIED.**

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 14th day of June, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge