UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-21632-Civ-GAYLES/TORRES

THI MEDICAL, S.A.C.,

    Plaintiff,

v.

FILMORE MANAGEMENT TRADING, LLC, *et al.*,

    Defendants.

_____/

## REPORT & RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Filmore Management Trading, LLC's ("Filmore") and Pedro R. Ast's ("Ast", and collectively with Filmore, "Defendants") motion for summary judgment filed by THI Medical, S.A.C. ("THI" or "Plaintiff") [D.E. 95]. Plaintiff failed to respond to the motion despite notice from the Court that the failure to respond could result in entry of judgment against Plaintiff. [D.E. 97]. Plaintiff's counsel previously moved to withdraw because counsel was no longer able to communicate with Plaintiff or its representatives despite multiple attempts. [D.E. 91]. That motion was conditionally granted by the Court so that Plaintiff was given adequate notice of the consequences of failing to retain substitute counsel and responding the motion.

Despite the Court's Order, Plaintiff has not retained substitute counsel and has not responded in any way to the long-outstanding discovery in the case or to the record submitted on Defendants' motion for summary judgment. Plaintiff's motion

thus could be Granted by default under Local Rule 7.1 and the failure to retain counsel. But under its independent obligation to review the merits of the motion, the Court has undertaken that review and determined whether the motion should be granted on its merits based on the available record. After careful consideration of the motion, response, reply, and relevant authority, and for the reasons discussed below, Defendants' motion should be **GRANTED** in its entirety and Judgment entered in favor of Defendants.

## I. BACKGROUND

Filmore is a Florida company that engages in buying and selling personal protective equipment. Ast is the CEO of Filmore. THI is a Peruvian medical equipment wholesaler that wished to sell PPE to hospitals and government agencies in Peru during the height of the Covid-19 pandemic. THI was introduced to Ast through Claudio Torres ("Torres") who told THI that Defendants had authentic 3M masks for sale.[1] Negotiations talks ensued between Ast and THI, during which Ast confirmed that his company could indeed deliver the masks. On December 4, 2020, THI agreed to purchase 500,000 3M 1860 N95 respirators from Filmore for $1,700,000.00 pursuant to the terms of a Sale and Purchase Agreement (the "SPA"). Between December 7 and 11, 2020, and prior to receiving the masks, THI wired two payments to Filmore's bank account in Miami for the agreed upon purchase price.

Prior to executing the SPA, Ast provided THI with an inspection report allegedly prepared by TUV Rheinland AG ("TUV") to assure THI that the masks were

---

[1] On February 16, 2022, Plaintiff filed a notice of voluntary dismissal, dismissing all Counts of the Complaint as to Defendant Claudio Torres. [D.E. 73].

2

authentic 3M masks. The report was issued pursuant to a visual inspection of the masks at Defendants' warehouse in Hong Kong and purportedly confirmed the authenticity and quality of the masks. While THI was told the masks were made in the United States by 3M, the masks were to be shipped out of Hong Kong by a third-party who would deliver them in Lima. However, once the masks arrived in Peru, THI complained that representatives from 3M concluded that they were counterfeit. A Peruvian government agency then seized the masks and commenced administrative proceedings against Plaintiff. Defendants, however, denied the allegations and insisted that they had no knowledge that any delivered masks were counterfeit or otherwise unfit for use.

THI nevertheless filed this lawsuit in this District against Filmore, its principal Ast, and others for multiple claims including breach of contract for international sale of goods, breach of the implied covenant of good faith and fair dealing, breach of Florida's Deceptive and Unfair Trade Practice Act, fraud in the inducement, negligent misrepresentation, and other claims.

Defendants filed multiple motions to dismiss on the original and amended complaints, which motions were granted in part. [D.E. 78, 79]. Plaintiff's operative claims against Defendants Filmore and Ast are for Breach of Contract for International Sale of Goods under the CISG (against Filmore), Breach of the Implied Covenant of Good Faith and Fair Dealing (against Filmore), Fraudulent Inducement (against Filmore and Ast), Fraud (against Filmore and Ast), Negligent Misrepresentation (in the alternative to Fraud) (against Filmore and Ast), and Breach of Florida's Deceptive and Unfair Trade Practices Act (against Filmore).

## II. APPLICABLE LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Specifically:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'"

*Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592-94).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ibid.*

It is important to note, however, that "the district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and supporting papers to determine whether they establish the absence of a genuine issue of material fact." *U.S. v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.,* 363 F.3d 1099, 1102 (11th Cir. 2004) (quoting *Jaroma v. Massey,* 873 F.2d 17, 20 (1st Cir. 1989)). And even if Local Rules 7.1 and 56.1 could be read to deem the motion granted by default based on the absence of timely opposition, the broader requirements of Rule 56 govern in that respect. *See also Kinder v. Carson,* 127 F.R.D. 543, 546 (S.D. Fla. 1989) ("[T]he granting of summary judgment by default is a disfavored sanction which, in this Court's view, is plainly inconsistent with Rule 56.").

The Court must thus review the available record and decide whether any genuine issue of material fact can be found in that record to preclude summary judgment. But the failure to respond to the motion still has consequences. First, only the record submitted on the motion can be considered. And, second, the failure to comply with Local Rule 56.1 by filing a counter-statement of material facts to oppose Defendants' statement means that the Court can deem admitted those facts set forth in Defendants' statement, *unless* the available record plainly contradicts those admitted facts. *See, e.g., Deegan v. Homestead Police Dep't,* 750 F. App'x 796, 799-800 (11th Cir. 2018) ("because [plaintiff] failed to file a "[s]tatement of material facts ... in opposition to [the officers'] motion for summary judgment," S.D. Fla. L. R. 56.1(a), we cannot say that the district court abused its discretion when it 'deemed admitted' the version of events in the officers' statement of undisputed facts.").

Based on this standard of review, we proceed to review the record independently of Plaintiff's default under Local Rule 7.1.

### III.   ANALYSIS

#### A.   *Breach of Contract for International Sale of Goods*

Count I of the operative complaint alleges a breach of contract action under the United Nations Convention on Contracts for the International Sale of Goods ("CISG") that governs Plaintiff's cause of action for Breach of Contract against Filmore. The CISG "applies to contracts of sale of goods between parties whose places of business are in different States when the States are Contracting States." Art. 1(1)(a), Apr. 11, 1980, S. Treaty Doc. No. 98-9, 1489 U.N.T.S. 3.

6

Section III, Article 45, of the CISG provides that "(1) If the seller fails to perform any of his obligations under the contract or this Convention, the buyer may: (a) exercise the rights [of avoidance] provided in articles 46 to 52; (b) claim damages as provided in articles 74 to 77."  THI here has asserted a damage claim under this provision on the claim that on January 3, 2021, THI's shipment of 3M Masks arrived in Peru and 3M representatives examined THI's shipment. The 3M representatives ultimately concluded that the 3M Masks were counterfeit and filed a complaint against THI.  The goods were thus non-conforming goods under the Convention because Filmore failed to deliver 3M masks that were of the quality and description required by the Agreement. Although THI undertook measures to mitigate the impact of Filmore's fundamental breach, THI nevertheless suffered damages for which it is entitled to compensation under the CISG, Article 74, that provides for "[d]amages for breach of contract by one party" calculated as the "sum equal to the loss, including loss of profit, suffered by the other party as a consequence of the breach." CISG, Art. 74. 64.

As with any contract claim, THI has the burden of presenting evidence of the underlying breach and its damages under these provisions.  The available record on summary judgment shows, however, that prior to the parties entering into an agreement, Filmore informed Plaintiff that neither Filmore nor its principals had ever been to Hong Kong and that Filmore had not and would not be inspecting the masks described in the Agreement.  Accordingly, the parties designed a procedure in the Agreement pursuant to which Plaintiff would be obligated to inspect the masks to confirm their conformance with the required specifications before completing the

7

purchase. So, under this arrangement, Plaintiff was responsible for appointing a third-party to inspect the Masks in Hong Kong prior to shipment. Only then would Plaintiff be required to pay the 50% deposit toward the purchase price. To that end, Plaintiff appointed a third-party, MIMPO Global Logistics ("MIMPO"), to inspect the Masks in Hong Kong. Neither Filmore nor Ast had any affiliation with or prior course of dealing with MIMPO. The parties further agreed to accept the findings of MIMPO as binding upon the parties (given that neither Plaintiff nor Filmore would actually be in possession or control of the masks until Plaintiff took possession in Hong Kong).

While MIMPO did not prepare a formal written report as contemplated by the Agreement, no record evidence refutes the fact that MIMPO inspected the masks at issue in this litigation over the course of two days in Hong Kong pursuant to the Agreement and confirmed the authenticity of the masks to both Plaintiff and Filmore. Following confirmation of the authenticity of the Masks, Plaintiff arranged for shipping of the Masks to Peru and completed its obligations as seller under the Agreement.

Despite the allegations of the Amended Complaint to the contrary, Plaintiff never participated in discovery in the case to support the allegations that Filmore breached under Section III of the Agreement. The available record shows that THI was contractually obligated to verify with a third party that the goods were conforming before they were shipped. In this way, the Agreement invoked the protections of Article 65 of the CIGSA that provides that "If under the contract the buyer is to specify the form, measurement or other features of the goods and he fails to make such specification either on the date agreed upon or within a reasonable time

8

after receipt of a request from the seller, the seller may, without prejudice to any other rights he may have, make the specification himself in accordance with the requirements of the buyer that may be known to him."

And notably the Convention further states that "(2) If the seller makes the specification himself, he must inform the buyer of the details thereof and must fix a reasonable time within which the buyer may make a different specification. *If, after receipt of such a communication, the buyer fails to do so within the time so fixed, the specification made by the seller is binding.*" (emphasis added).

The only conclusion that can be drawn from this record is that THI has not satisfied its burden of showing a genuine issue of fact that Filmore ever breached the terms of their Agreement. And even if it did, no showing of damages have been made under Article 74 because THI has an obligation to show that damages it suffered flowed from the breach itself. No such showing has been made here. To the contrary, the record shows that THI's agent specified the quality of the goods to be delivered, which bound THI to the shipment of the goods. To the extent buyer's agent was negligent in that respect, the remedy would then have to be determined as between the agent and the principal, THI. As seller, Filmore complied with its obligations under the CIGSA.

Accordingly, summary judgment is due to be entered on Count I of the Amended Complaint in Filmore's favor and no damages may be awarded on this claim.

### B. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

THI alleges in Count II a breach of the implied covenant of good faith and fair dealing. Florida contract law recognizes the implied covenant of good faith and fair dealing if it satisfies two conditions:

> Florida contract law recognizes the implied covenant of good faith and fair dealing in every contract. This covenant is intended to protect the reasonable expectations of the contracting parties in light of their express agreement. However, there are two restrictions on causes of action for the breach of good faith and fair dealing. First, the implied covenant of good faith should not be invoked to override the express terms of the agreement between the parties. Second, a claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached.

*Southern Internet Systems. Inc. ex rel. Menotte v. Pritula*, 856 So. 2d 1125, 1127 (Fla. 4th DCA 2003) (quoting *Insurance Concepts and Design, Inc. v. Healthplan Services, Inc.,* 785 So. 2d 1232, 1234-35 (Fla. 4th DCA 2001)). So, while a breach of the implied covenant of good faith and fair dealing is not technically an independent cause of action, it is a theory of liability because it "attaches to the performance of a specific contractual obligation." *Centurion Air Cargo v. UPS Co.,* 420 F.3d 1146, 1151-52 (11th Cir. 2005).

Before addressing the merits of the claim on this record, we note that we doubt that any such claim can be made that contradicts or undermines the specific obligations on the seller and buyer that are party to a sale of goods agreement governed by CIGSA. As the Eleventh Circuit has found, "Courts applying the CISG cannot . . . upset the parties' reliance on the Convention by substituting familiar principles of domestic law when the Convention requires a different result." *MCC-Marble Ceramic Ctr., Inc., v. Ceramica Nuova d'Agostino, S.p.A.,* 144 F.3d 1384, 1391

10

(11th Cir. 1998) (rejecting application of domestic law's parol evidence rule in the fact of the Convention's preference for evidence of a contracting party's subjective intent).

So, to the extent THI has no claim under the CIGSA as found above, we strongly doubt that THI could resort to a purely domestic theory of liability to obtain remedies for a purported breach of a CIGSA-governed agreement. Here, THI alleged that "Filmore consciously and deliberately refused to discharge its contractual obligations under the Agreement and knew that the 3M masks it provided THI were not authentic and did not conform to 3M's quality standards." [D.E. 1 at ¶ 69]. And "Filmore's failure to deliver authentic 3M masks to THI *unfairly frustrated* the Agreement's purpose and disappointed THI's expectations." *Id.* at ¶ 70 (emphasis added).

The remedial provisions of the CIGSA show, however, that commercial frustration is not a substitute for strict application of the Convention's language. As detailed above, the Convention foresees the type of issue raised by the sale of these masks and provides an anticipatory process for a buyer to inspect and approve the sale of goods prior to delivery. Filmore contends, and the record supports, that this process was followed in this Agreement. So, given that the Convention supports that defense on Count I, we are hard pressed to see how an alternative claim arising under domestic law could upset that balance. *See, e.g., Speedway SuperAmerica, LLC v. Tropic Enterprises, Inc.,* 966 So. 2d 1, 3 n.2 (Fla. 1st DCA 2007) (the implied covenant of good faith "is a gap filling default rule" which comes into play "when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards.").

11

But even if the Florida claim could withstand that scrutiny, the available record does not support the claim. The record shows that THI did not "deliberately refuse" to discharge its obligations because it was not tasked with the duty of inspection of the goods prior to delivery. Filmore relies on the available record to show that its agents or employees were never made aware prior to delivery that the goods at issue were non-conforming in any respect. So, even if it turns out that the masks were indeed not what THI bargained for, there is no support in the record for a breach of good faith on Filmore's part.

In sum, the cause of action is preempted by CIGSA's remedies for a breach of this contract for the sale of goods. And even if it is not, there is no liability under Count II because no evidence of bad faith dealing on Filmore's part can be gleaned from the record presented on the motion. Accordingly, summary judgment is due to be entered on Count II of the Amended Complaint in Filmore's favor and no damages may be awarded on this claim.

### C. *Fraudulent Inducement*

Count IV of the operative complaint stems from the claim under Florida law that Defendants are liable for tort damages in addition to the contractual damages sought under the CIGSA. To support a fraud in the inducement claim: "(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induce another's reliance; and (4) consequent injury by the other party acting in reliance upon the representation." *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 209 (Fla. 3d DCA 2003). Moreover, Florida courts have held that promises of future

performance can support a claim for fraudulent inducement when those promises are made "without any intention of performing, or with the positive intention not to perform." *Palmer v. Santa Fe Healthcare Sys., Inc.*, 582 So. 2d 1234, 1236 (Fla. Dist. Ct. App. 1991); *see also Perry v. Cosgrove*, 464 So. 2d 664, 666 (Fla. Dist. Ct. App. 1985) (denying motion to dismiss fraud claim where defendant induced plaintiff into contract through promises defendant never intended to perform); *Stefan v. Singer Island Condominiums Ltd.*, No. 08-80039-CIV, 2009 WL 426291, at *16 (S.D. Fla. Feb. 20, 2009) (finding fraudulent inducement where promisor made promises of future conduct with the positive intent not to perform them).

The Complaint alleges that Defendants' material and deliberate misrepresentations induced Plaintiff to enter into the sales agreement, including statements from Ast that his company could meet Plaintiff's need for the 500,000 3M masks, and the TUV's inspection report purporting to certify that Defendants' masks were indeed authentic 3M respirators. These acts of alleged fraud crystalized before the parties ever executed the agreement and are distinct from the acts that allegedly breached the terms of the contract. Moreover, Plaintiff asserts that Defendants made these promises without any intention of performing, for Defendants knew full well that their masks were in fact counterfeit items. If true, these acts could constitute a fraud that is extraneous to the contract. They are acts of alleged deceit supported by "proof of facts separate and distinct form the breach of contract," *HTP, Ltd.*, 685 So.2d at 1239, and that were perpetrated to induce Plaintff into entering the agreement. *See McArthur Dairy, LLC v. McCowtree Bros. Dairy*, No. 09-62033-CIV, 2011 WL 2118701, at *8 (S.D. Fla. May 27, 2011) ("A plaintiff has a cause of

13

action for fraud if the fraud is perpetrated to induce the plaintiff to enter the contract."); *Mejia v. Jurich*, 781 So.2d 1175, 1178 (Fla. 3d DCA 2001) (holding that, "[W]hen fraudulent misrepresentations in the formation of the contract are alleged, as is the case here, the economic loss rule does not bar recovery.") (citations omitted).

The problem now, however, is that THI has presented no positive evidence in this record to sustain those claims. Instead, the only record evidence we have is Defendants' sworn affidavits that squarely deny them. That sworn evidence provides that Ast and Filmore had no knowledge regarding the alleged lack of authenticity of the goods or that they in any way conspired with other parties to sell inauthentic goods. Ast and Filmore had no role in the commissioning or preparation of the TUV Inspection Report. Indeed, the Agreement attached to the Complaint clearly creates a procedure by which Plaintiff was to cause its own independent inspection of the goods through a third-party agent to confirm that the masks conformed with the contractual specifications and the Plaintiff had the right to reject the goods if they failed to so conform. That agreed-upon procedure was entirely consistent with the seller's obligations under CIGSA, and thus, without more, that resulting agreement cannot satisfy THI's burden of showing an issue of fact as to the false representation that is at the heart of the fraud claim.

Apart from that, THI cannot meet its burden with respect to the reliance element precisely because the parties' agreement expressly discounted any reliance on any Filmore representation as to the suitability of the masks. To the contrary, Filmore represented that it could not independently certify the precise specifications of the goods, so THI agreed to retain the third party to fill that gap. THI did so, so

14

as a matter of law reliance cannot be established from any misrepresentation (separate and apart from the promise to perform) that may have taken place prior to the execution of the agreement. *See, e.g., Johnson v. Univ. Health Servs., Inc.,* 161 F.3d 1334, 1341 (11th Cir. 1998) (summary judgment affirmed where parties entered into detailed, twelve-page, custom-made contract that made no reference to the purported fraudulent promise, so plaintiff could not justifiably rely on such promise to sustain fraudulent inducement claim); *Crigler v. Cessna Aircraft Co.,* 830 F.2d 169, 171 (11th Cir. 1987) (summary judgment affirmed where buyer was on notice of possible defects of goods sold, so no justifiable reliance to sustain fraud claim).

Accordingly, summary judgment is due to be entered on Count IV of the Amended Complaint in Filmore's and Ast's favor and no damages may be awarded on this claim.

### D. *Fraud*

To state a claim for fraud, a plaintiff must show: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *In re Harris*, 2021 WL 2946295, at *6 (11th Cir. July 14, 2021) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)). Here, Count VI of the Amended Complaint alleged that false representations were made after the parties executed the SPA, including Defendants' use of fabricated 3M documents and communications that purported to confirm that the delivered masks were authentic 3M respirators.

15

But even if a claim was properly stated with respect to these additional misrepresentations, the fraud claim cannot survive summary judgment on this record. There is no evidence that Defendants ever created false documents to bolster their performance under the contract. Plus, given that THI independently inspected and approved the goods before delivery, no justifiable reliance could be established even if any such statements or documents were ever made. So, for the same reasons as the fraudulent inducement claim, this post-contract fraud claim also cannot survive review.

Accordingly, summary judgment is due to be entered on Count VI of the Amended Complaint in Filmore's and Ast's favor and no damage may be awarded on this claim.

### E. *Negligent Misrepresentation*

To state a cause of action for negligent misrepresentation, a plaintiff must allege that: "(1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation. *See Florida Women's Med. Clinic, Inc. v. Sultan*, 656 So. 2d 931 (Fla. 4th DCA 1995) (quoting *Baggett v. Electricians Local* 915, 620 So. 2d 784, 786 (Fla. 2d DCA 1993)).

Plaintiff alleges a claim in Count IX for negligent misrepresentation in the alternative to its fraud claim (Count VI). Though this claim could survive the motion to dismiss as an alternative claim, on summary judgment it fails for the same legal

16

reasons as the fraudulent inducement claim. There has been no showing of any actionable misrepresentations made to induce reliance, nor has there been a showing of justifiable reliance on those representations given the knowledge and duty to inquire that THI already had. So, the negligent misrepresentation theory fails on that same score.

Accordingly, summary judgment is due to be entered on Count IX of the Amended Complaint in Filmore's and Ast's favor and no damages may be awarded on this claim.

### F. *FDUTPA Claim*

The final claim in the operative complaint arises under Florida's Deceptive and Unfair Trade Practice Act, Fla. Stat. §§ 501.201, et seq., which provides that "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1). Plaintiff alleges that "Filmore's deceptive and unfair practices included: (a) misrepresenting that it was selling authentic 3M masks; (b) misrepresenting that the 3M Masks conformed to 3M's quality standards; (c) misrepresenting that the 3M Masks were manufactured in 3M's Aberdeen, South Dakota plant in the United States; and (d) providing fraudulent documentation to support its position that the masks it sold to THI were authentic 3M masks

Assuming that all these theories of liability are not preempted by the exclusive provisions of the CIGSA, this claim also fails because THI has not supported the Complaint's allegations with any proof that Filmore engaged in the purported misrepresentations at the heart of the claim. To state an FDUTPA claim, THI must

17

prove (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages. *See, e.g., Dolphin LLC v. WCI Communities, Inc.,* 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland,* 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). Like THI's related tort claims addressed above, this claim must also fail given the lack of the evidence in the record with which to create an issue of fact in the face of Filmore's denials and its reliance on the plain terms of the CIGSA-governed agreement. THI has no proffered evidence that any misleading statements were ever made, as discussed above. But even if it had, no showing of causation or actual damages has been presented on this record. The record supports a finding that any losses under the contract were attributable to the third party retained to verify conformance under the agreement, as opposed to any statements or deception that can be tied to Filmore. The parties' agreement, therefore, undermines the theory that any non-preempted FDUTPA claim can be sustained.

Accordingly, summary judgment is due to be entered on Count XI of the Amended Complaint in Filmore's favor and no damages may be awarded on this claim.

### IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**. No genuine issue of fact is found in this record and Judgment as a matter of law should be entered in Defendants' favor as to Counts I, II, IV, VI, IX, and XI of the operative Complaint. The case may then be CLOSED.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 23rd day of August, 2023.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge